**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 17-2278

MARION FOWLER, Esq., as Guardian ad Litem for Jefferey Vanderhall, Assignee,

    Plaintiff - Appellant,

  v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

    Defendant - Appellee.

Appeal from the United States District Court for the District of South Carolina, at Florence. Richard Mark Gergel, District Judge. (4:17-cv-01081-RMG)

Argued: October 31, 2018           Decided: January 9, 2019

Before WILKINSON, FLOYD, and RICHARDSON, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Robert Norris Hill, LAW OFFICES OF ROBERT HILL, Lexington, South Carolina, for Appellant. Robert W. Whelan, NELSON MULLINS RILEY & SCARBOROUGH LLP, Charleston, South Carolina, for Appellee. **ON BRIEF:** William P. Hatfield, HATFIELD TEMPLE, LLP, Florence, South Carolina, for Appellant. Charles R. Norris, NELSON MULLINS RILEY & SCARBOROUGH LLP, Charleston, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

4:17-cv-01081-RMG    Date Filed 01/09/19    Entry Number 45

PER CURIAM:

This is the second appeal arising from the settlement of an insurance claim between Jefferey Vanderhall and State Farm Mutual Automobile Insurance Company. Vanderhall was permanently paralyzed when he was hit by a truck driven by Maurice Wilson. State Farm is involved because it insured Wilson's grandmother, Priscilla Ford, who owned the car. On appeal, Vanderhall's Guardian ad Litem (GAL), Marion Fowler, asserts that the district court erroneously granted State Farm summary judgment. Fowler argues that under South Carolina law, State Farm had a duty to its insureds to investigate Vanderhall's mental competency to determine if he had the legal capacity to settle a claim. The district court disagreed, and for the following reasons, we affirm.

I.

This case has a tortuous procedural history. On August 21, 2011, Vanderhall was bicycling home from his job as a dishwasher in Florence, South Carolina when he was hit by a truck. Vanderhall suffered severe injuries and was unconscious for approximately a week after the accident. He was permanently paralyzed and is now a quadriplegic. On August 23, 2011, Vanderhall's mother represented that she was Vanderhall's GAL when retaining attorney William Hatfield on Vanderhall's behalf. But at the time that she retained Hatfield, Vanderhall's mother had not been appointed his GAL.

Hatfield, acting on the understanding that Vanderhall was his client, wrote to State Farm and offered to settle any of Vanderhall's claims resulting from his injuries. State Farm responded with a counteroffer, and Vanderhall rejected it. Hatfield then filed a

2

personal-injury action in state court against Wilson (the driver of the truck) and Ford (the owner of the truck). That action settled for $7 million. As part of the settlement, Wilson and Ford assigned to Vanderhall any rights they had against State Farm in exchange for a promise that he would never seek to collect the $7 million from their assets. Hatfield—still acting on Vanderhall's behalf—went on to sue State Farm to recover the $7 million for which the parties had settled. Critically, Vanderhall claimed that State Farm was liable to Wilson and Ford (and, by assignment, to Vanderhall) for the $7 million settlement because State Farm, in rejecting Vanderhall's initial settlement offer, had breached its covenant of good faith and fair dealing. State Farm removed the action to federal court. There, the district court concluded that Hatfield's initial settlement offer had been invalid, because Vanderhall's mother had never had the authority to hire Hatfield on Vanderhall's behalf. Thus, according to the district court, State Farm could not be liable to Wilson and Ford (or, by assignment, to Vanderhall) for rejecting the initial settlement offer. On that basis, the district court granted State Farm's motion for summary judgment. We affirmed. *Vanderhall v. State Farm Mut. Auto. Ins. Co.*, 632 F. App'x 103 (4th Cir. 2015).

A state court then nullified the $7 million settlement and appointed a GAL, Marion Fowler, for Vanderhall. Fowler then hired Hatfield to represent his interests on Vanderhall's behalf. Hatfield filed a new action against Wilson and Ford in state court. The case went to trial. Before the jury returned a verdict, Wilson and Ford again assigned their rights against State Farm to Vanderhall, with Vanderhall again promising

not to collect any awarded damages from Wilson or Ford. The jury then returned a verdict in Vanderhall's favor, awarding him a total of $75 million in damages.

Fowler (on behalf of Vanderhall) sued State Farm in federal court to recover the damages awarded at trial. As is relevant here, he argued that State Farm was liable to Wilson and Ford (and, by assignment, to Vanderhall) because it had breached its duty of care by failing to investigate Vanderhall's competence before Wilson and Ford entered into the since-invalidated $7 million settlement. The parties filed cross-motions for judgment on the pleadings, and the district court granted State Farm's motion, holding that "a litigant has no duty under South Carolina law to inquire into the mental competence of an adverse party." J.A. 559. Fowler appeals from the district court's order, raising a single issue: whether State Farm had a duty to Wilson and Ford to investigate Vanderhall's competency before entering into the 2013 settlement.

II.

"We review *de novo* a district court's ruling on a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c)." *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014). A defendant is entitled to judgment on the pleadings only if, "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Id.* at 474 (internal quotation marks and citation omitted).

4

III.

The issue before us is discrete: whether State Farm owed a duty to Ford and Wilson to investigate Vanderhall's competency before entering into the 2013 settlement agreement even though Hatfield made repeated representations to opposing counsel and to multiple courts that Vanderhall was competent. We hold that no such duty exists under South Carolina law. Therefore, we affirm the district court in full.

In South Carolina, a liability insurer has a duty to settle a covered personal-injury claim if settlement is the "reasonable thing" to do. *Tyger River Pine Co. v. Md. Cas. Co.*, 170 S.E. 346, 347 (S.C. 1933). If an insurer unreasonably refuses or fails to settle within the policy limits, it is liable to the insured for the amount of the judgment against him in excess of the policy limits. *Id.* Fowler depends upon the *Tyger River* doctrine to argue that State Farm was negligent in discharging its duty to settle. Specifically, Fowler claims that State Farm was negligent in failing to investigate Vanderhall's competency and seek the appointment of a GAL. This failure, Fowler claims, led the state court to set aside the initial $7 million settlement and exposed Wilson and Ford to a $75 million jury verdict.

Fowler's negligence claim fails because the duty he seeks to enforce against State Farm does not exist under South Carolina law. "An essential element in a cause of action for negligence is the existence of a legal duty of care owed by the defendant to the plaintiff." *Huggins v. Citibank, N.A.*, 355 S.C. 329, 332 (2003). Fowler has produced no case or statute supporting the proposition that State Farm had a duty to investigate Vanderhall's competency.

5

Fowler points us to several South Carolina cases affirming that insurance companies have a general duty to review claims in good faith and settle them when reasonable. *See, e.g.*, *Tadlock Painting Co. v. Md. Cas. Co.*, 473 S.E.2d 52, 55 (S.C. 1996) (recognizing "the existence of a cause of action for breach of the implied covenant of good faith and fair dealing by an insured against his or her insurer for consequential damages allegedly suffered because of the insurer's bad faith handling of third party claims"); *Doe v. S.C. Med. Malpractice Liab. Joint Underwriting Ass'n*, 557 S.E.2d 670, 674 (S.C. 2001) (stating that "a liability insurer owes its insured a duty to settle a personal injury claim covered by the policy, if settlement is the reasonable thing to do.") (quotation marks and citation omitted). But the cases on which Fowler relies do not establish that an insurer has a specific duty to investigate the competency of a claimant where the claimant's own attorney repeatedly represents to opposing counsel and to the court that the claimant is competent.

Fowler also argues that the South Carolina Claims Act (the "Act"), S.C. Code Ann. § 38-59-20 (2018), placed a duty upon State Farm to investigate Vanderhall's competency. The Act states that insurance carriers must "adopt and implement reasonable standards for the prompt investigation and settlement of claims" and "attempt[] in good faith to effect prompt, fair, and equitable settlement of claims, including third-party liability claims, submitted to it in which liability has become reasonably clear." S.C. Code Ann. §§ 38-59-20(3), (4). These provisions do not create a duty for an insurance carrier to challenge a claimant's own counsel's determination of the claimant's competency. Furthermore, as the South Carolina Supreme Court laid out in

6

*Masterclean, Inc. v. Star Insurance Co.*, 556 S.E.2d 371, 377 (S.C. 2001), third parties do not have a private right of action under the Act and are only entitled to administrative review before the Chief Insurance Commissioner. Thus, the Act does not create a statutory private right of action for claimants such as Fowler.

Fowler nevertheless argues that the Act directs insurers to abide by "reasonable standards," and that there is record evidence by way of proffered expert affidavits that State Farm violated those reasonable standards, as understood by the industry, by not investigating Vanderhall's competency. This evidence would be relevant to establish a standard of care if a corollary legal duty existed. But where there is no duty of care by law, evidence on the standard of care is irrelevant. *See Doe ex rel. Doe v. Wal–Mart Stores, Inc.*, 711 S.E.2d 908, 912 (S.C. 2011) (stating that it is not until a legal duty has been established that the court looks to industry standards to define a standard of care); *see also Steinke v. S.C. Dep't of Labor, Licensing & Regulation*, 520 S.E.2d 142, 149 (S.C. 1999) ("The court must determine, as a matter of law, whether the law recognizes a particular duty.").

Finally, Fowler argues that South Carolina Rule of Civil Procedure (SCRCP) 17(d)(6) establishes a duty for insurance carriers to investigate the competency of a claimant. Not so. The rule states in relevant part that:

> If no application for appointment of a guardian ad litem be made by or in behalf of a minor, imprisoned, or incompetent party within thirty (30) days after service of the summons upon such party, then the guardian ad litem *may* be appointed upon application of *any other party* to the action . . . .

7

*Id*. (emphasis added). It is true that SCRCP 17(d)(6) allows any party or a court to appoint a GAL. But there is no caselaw that supports Fowler's proposition that this rule creates a duty on the part of State Farm to investigate whether to appoint a GAL for Vanderhall. Indeed, the rule states only that State Farm, as a party to the action, "may" seek the appointment of a GAL.

We therefore hold that no caselaw or statute supports Fowler's argument that South Carolina recognizes a duty for an insurance carrier to investigate the competency of a claimant where the claimant's own attorney repeatedly represents to opposing counsel and to the court that the claimant is competent.[*]

Fowler acknowledges that he has been "unable to uncover . . . any case law one way or the other on an insurance company's duty to investigate a claimant's mental capacity once the company learns that a claimant is mentally retarded," and asks us to

---

[*] Fowler frames the issue as one of State Farm's negligence. But we must also consider that in the state and federal litigation preceding the present action, Hatfield affirmatively represented that he had complied with his non-adversarial, ethical obligations to his client and to the court by stating that Vanderhall was competent. State Farm admits that it had notice that Vanderhall had a medical history including mild mental retardation but contends that Hatfield had an ethical obligation to the court to evaluate Vanderhall's competency himself before bringing the first suit against Wilson and Ford or signing the $7 million settlement agreement, and that State Farm should be able to assume that Hatfield fulfilled that ethical obligation. State Farm further argues that to find that State Farm owed a duty to Wilson and Ford to investigate Vanderhall's mental competency when Hatfield made representations to the court that Vanderhall was competent would assume that a claimant's attorney is violating South Carolina Rule of Professional Conduct 3.3, which outlines an attorney's duty of candor towards the court. *See* S.C. App. Ct. R. RULE 407 RPC 3.3(a)(1) ("A lawyer shall not knowingly make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer."). We are unwilling to find that an insurance carrier owes a duty to its insured that is in direct conflict with this rule.

8

certify this question to the South Carolina Supreme Court. Br. at 18. We decline to do so.

The South Carolina Appellate Court Rules provide that the South Carolina Supreme Court:

> [I]n its discretion may answer questions of law certified to it by any federal court of the United States . . . when requested by the certifying court if there are involved in any proceeding before that court questions of law of this state which may be determinative of the cause then pending in the certifying court when it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court.

S.C. App. Ct. R. 244(a

Whether State Form owes a duty to Vanderhall is a question of South Carolina state law that may be determinative of this dispute, and it appears that the state supreme court has issued no controlling precedent on the matter. Nevertheless, we are not convinced that the question requires certification. Where there is no controlling law in the forum state that is directly on point, a federal court generally attempts to do as the state's high court would do if confronted with the same case. *Wilson v. Ford Motor Co.*, 656 F.2d 960, 960 (4th Cir. 1981); *see also Copier ex rel. Lindsey v. Smith & Wesson Corp.*, 138 F.3d 833, 838 (10th Cir. 1998) ("[c]ertification is not to be routinely invoked whenever a federal court is presented with an unsettled question of state law" (alteration in original) (quoting *Armijo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th Cir. 1988)); *Pennington v. State Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009) ("[T]he federal courts generally will not trouble our sister state courts every time an arguably unsettled question of state law comes across our desks. When we see a reasonably clear

9

and principled course, we will seek to follow it ourselves." (internal quotation marks omitted)). We have no difficulty concluding that in this case, the Supreme Court of South Carolina would hold that an insurer's duty of care to an insured does not require the insurer to independently investigate a claimant's mental competence when the claimant's attorney has repeatedly confirmed the claimant's competence to both the insurer and the court.

Furthermore, Fowler did not seek certification of this question in the district court—it was only after the district court ruled against him that his proposed certification question surfaced. This weighs against certification now. *See Massengale v. Okla. Bd. of Exam'rs in Optometry*, 30 F.3d 1325, 1331 (10th Cir. 1994) (court of appeals "generally will not certify questions to a state supreme court when the requesting party seeks certification only after having received an adverse decision from the district court"); *Thompson v. Paul*, 547 F.3d 1055, 1065 (9th Cir. 2008) (holding that district court did not abuse its discretion by denying motion to certify brought after adverse decision on dispositive motion, reasoning that "there is a presumption against certifying a question to a state supreme court after the federal district court has issued a decision"); *see also Ball v. Joy Mfg. Co.*, 755 F. Supp. 1344, 1373 (S.D.W. Va. 1990), *aff'd*, 958 F.2d 36 (4th Cir. 1991), *cert. denied*, 116 L. Ed. 2d 780 (1992) (denying plaintiff's motion for certification of state-law question filed after district court announced decision to grant defendant's motion for summary judgment). While we have not adopted a categorical rule against certifying a question following an adverse decision—and do not use this case as a vehicle to do so—we are persuaded that in these circumstances, the Ninth and Tenth Circuit's

10

approach is correct. Fowler filed this action in federal court. He received an unfavorable result from the district court. He may not seek a different result in another forum now.

Finally, as a policy matter, this is not a close question of state law. The doctrine of state-law certification contemplates that only difficult, novel, and important state-law questions are certified to state courts. This case does not present one of those questions.

IV.

For the foregoing reasons, the judgment of the district court is hereby

*AFFIRMED*.

11